1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRINA SAMSON, on her own behalf, and on the behalf of others similarly situated,<br><br>           Plaintiffs,<br><br>   vs.<br><br>SCHOLASTIC INC.,<br><br>           Defendant. | King County Superior Court<br>Case No. 25-2-28762-9 SEA<br><br><br>DEFENDANT'S NOTICE OF REMOVAL |

10

11

12

13

14

15

16

17

18

**TO THE CLERK OF THE COURT:**

19

**PLEASE TAKE NOTICE THAT,** Defendant Scholastic Inc. ("Scholastic"), by its

20

undersigned counsel Law Office of Amanda Beane, P.C., hereby removes the above-

21

captioned action from the Superior Court of the State of Washington, King County, Case No.

22

25-2-28762-9 SEA, to the United States District Court for the Western District of

23

Washington, Seattle Division. This Notice of Removal is filed pursuant to 28 U.S.C.

24

§§ 1332, 1441, 1446, and 1453. As grounds for removal, Scholastic states as follows[1]:

25

26

---

[1] Scholastic reserves all rights to assert any and all defenses to the Complaint. Scholastic further reserves the right to amend or supplement this Notice of Removal.

DEFENDANT'S NOTICE OF REMOVAL
Page 1

I.      **TIMELINESS OF REMOVAL - PROCEDURAL HISTORY**

1.      On September 30, 2025, Plaintiff Trina Samson ("Plaintiff") commenced this action in the Superior Court of the State of Washington, King County, Case No. 25-2-28762-9 SEA, entitled *Trina Samson v. Scholastic Inc.*, by electronically filing a Summons and Complaint (attached as **Exhibit A**).

2.      Plaintiff's Complaint asserts violations of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190.020, and the Washington Consumer Protection Act ("CPA"), RCW 19.86.020, on behalf of herself and a putative Washington class.  Compl. ¶¶ 78-105.  Plaintiff alleges that Scholastic violated CEMA and CPA by sending Plaintiff "commercial emails whose subject lines contain false or misleading statements."  *Id.* ¶ 74.

3.      The Affidavit of Service filed by Plaintiff states that Scholastic was served on October 1, 2025 via its registered agent CSC in Tumwater, WA (attached as **Exhibit B**). Scholastic denies that it was properly served and reserves all rights and defenses.

4.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process and pleadings on file with the Superior Court of the State of Washington, King County are attached to the Verification of State Court Records filed with this Notice.

II.     **VENUE AND JURISDICTION**

5.      Scholastic denies that Plaintiff has adequately alleged that personal jurisdiction exists in this action, and Scholastic does not waive any applicable personal jurisdiction defense.

6.      Venue is proper in this Court for purposes of removal pursuant to 28 U.S.C. §§ 128(b), 1441(a), and 1446(a), because the Superior Court of the State of Washington, King County, where the State court Action is pending, is a state court within the Western District of Washington, Seattle Division.  *See* LCR 3(e)(1).

7.      As set forth more fully below, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) and (d)(2), and is therefore eligible for removal under 28 U.S.C.

DEFENDANT'S NOTICE OF REMOVAL
Page 2

1   § 1441(a).

2        8.      All other requirements for removal are satisfied.

3   **III.    REMOVAL IS PROPER UNDER DIVERSITY JURISDICTION**

4        9.      This Court has original jurisdiction under 28 U.S.C. § 1332 because there is

5   complete diversity between the parties and the amount in controversy exceeds $75,000 for

6   the Plaintiff.

7        **A.      Complete Diversity Exists**

8        10.     Plaintiff and Scholastic are citizens of different states.

9        11.     Scholastic is a corporation duly organized and validly existing under the laws

10  of the State of Delaware, with its principal place of business located in New York.  Compl.

11  ¶ 11. Thus, Scholastic is a citizen of Delaware and New York.  *See* 28 U.S.C. § 1332(c)(1)

12  ("a corporation shall be deemed to be a citizen of every State and foreign state by which it

13  has been incorporated and of the State or foreign state where it has its principal place of

14  business").

15       12.     Based on the allegations in the Complaint, Plaintiff "is a resident of King

16  County, Washington."  Compl. ¶ 10.  For purposes of diversity of citizenship jurisdiction,

17  citizenship is determined by the individual's domicile at the time that the lawsuit is filed.

18  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000).  Evidence of

19  continuing residence creates a presumption of domicile.  *Lew v. Moss,* 797 F.2d 747, 751 (9th

20  Cir. 1986).

21       13.     Accordingly, complete diversity exists for purposes of 28 U.S.C. § 1332(a)

22  and 1441(b) because this is a civil action between citizens of different states.

23  **B.    The Amount in Controversy Exceeds $75,000**

24       14.     The amount-in-controversy requirement of 28 U.S.C. §§ 1332(a) is satisfied

25  here because the Complaint seeks more than $75,000 for the Plaintiff.  Specifically, Plaintiff

26  seeks: (1) statutory damages of $500 for each alleged violation of CEMA under RCW

DEFENDANT'S NOTICE OF REMOVAL
Page 3

1    19.190.020(1)(b); (2) treble damages pursuant to RCW 19.86.090; and (3) costs and

2    attorneys' fees associated with this litigation, also under RCW 19.86.090.  Compl. ¶¶ 95,

3    105, p. 16 (Prayer for Relief). The combined value of Plaintiff's claims exceeds $75,000.

4          15.    When determining the amount in controversy, a court must "assume that the

5    allegations of the complaint are true and assume that a jury will return a verdict for the

6    plaintiff on all claims made in the complaint."  *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx.

7    646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,

8    199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  The question is what amount a plaintiff's

9    complaint places "in controversy," not what a defendant may actually owe in damages.

10   *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted).

11   Scholastic does not need to "prove" the amount in controversy for purposes of removal.  *See*

12   *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

13         16.    Courts evaluate the amount in controversy by aggregating the total amount of

14   actual or statutory damages being claimed, any asserted punitive damages, and any attorneys'

15   fees authorized by contract or statute.  *See Trepanier v. Progressive Direct Ins. Co.*, 2012

16   WL 12882865, at *2 (W.D. Wash. Sept. 19, 2012) ("[T]he amount in controversy includes

17   not just actual damages, but also statutorily authorized attorneys' fees and treble damages.").

18   Courts also include treble damages in the calculation.  *See, e.g., Ten Bridges, LLC v. Midas*

19   *Mulligan, LLC*, 522 F. Supp. 3d 856, 871 (W.D. Wash. 2021).

20         17.    Here, Plaintiff seeks actual damages or liquidated damages of $500,

21   whichever is greater, per email that purportedly violates CPA, in addition to treble damages.

22   Compl. ¶ 105.  This amounts to a total of at least $1,500 per email.  To the extent actual

23   damages were to exceed liquidated damages under CPA, such damages may be trebled up to

24   $25,000 per violation, per RCW 19.86.090.

25         18.    Plaintiff identifies eight (8) allegedly false or misleading emails that

26   purportedly violate CPA, but the Complaint states that these are merely "examples" of an

DEFENDANT'S NOTICE OF REMOVAL
Page 4

1  alleged ongoing "scheme" by Scholastic that routinely violates CPA.  Id. ¶¶ 39-63.

2      19.      Scholastic denies that its email practices violated CEMA or the CPA.

3  Nevertheless, Plaintiff seeks potential damages that would exceed $75,000.

4      20.      In addition to these damages, Plaintiffs also seek to recover attorneys' fees.

5  Id. ¶¶ 105, p. 16 (Prayer for Relief).  Potential recovery in attorneys' fees alone would likely

6  exceed $75,000 if Plaintiff were to prevail.

7      21.      "In determining the amount in controversy, the court may consider damage

8  requests and awards in similar cases."  Ballard v. Corinthian Colleges, Inc., No. C-06-5256-

9  FDB, 2006 WL 1806190 at *2 (W.D. Wash. June 28, 2006) (citing Kroske v. U.S. Bank

10 Corp., 432 F.3d 976, 980 (9th Cir. 2005) (as amended on denial of reh'g and reh'g en banc

11 (Feb. 13, 2006))).  In past litigation, attorneys from the same law firms representing Plaintiff

12 represented that their hourly rates for partners at their firms range from $600 - $1,308 per

13 hour.  See Beane Decl., ¶¶ 3-6. At these rates, Plaintiff's counsel would only need to

14 contribute around 60 hours at $1,308 per hour or 125 hours at $500 per hour of attorney time

15 (or some combination thereof), excluding other fees and costs, to exceed the $75,000

16 threshold in attorney's fees alone. Therefore, Plaintiff's attorneys' fees alone would exceed

17 the $75,000 threshold.

18     22.      Based on the foregoing, the amount-in-controversy requirement for diversity

19 jurisdiction is satisfied.  As a result, this Court has original jurisdiction pursuant to 28 U.S.C.

20 § 1332.

21 **IV.    REMOVAL IS PROPER UNDER CAFA JURISDICTION.**

22     23.      This Court also has original CAFA jurisdiction pursuant to 28 U.S.C.

23 §§ 1332(d) and 1453.

24     24.      As set forth below, this is a putative class action in which: (1) Plaintiff alleges

25 there are more than 100 members in the purported class; (2) at least one member of the

26 proposed class is a citizen of a different state than Scholastic; and (3) based upon the

DEFENDANT'S NOTICE OF REMOVAL
Page 5

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

allegations in the Complaint, the claims of the putative class members exceed the sum or value of $5 million in the aggregate. Thus, this Court has original jurisdiction over this action, and the action may be removed to this Court pursuant to 28 U.S.C. § 1332(d)(2).

**A. Plaintiff's Proposed Class Consists of More Than 100 Members**

25. In the Complaint, Plaintiff alleges that she is a resident of the State of Washington, and purports to seek damages on behalf of herself and a Washington class, consisting of "[a]ll Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period." Compl. ¶ 78.

26. Plaintiff alleges that "the Class is estimated to minimally contain thousands of members." *Id*. ¶ 82.

27. Accordingly, based on the allegations in the Complaint, the aggregate number of members of the alleged class is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(b).

**B. Minimal Diversity Exists**

28. This Court has original jurisdiction under CAFA when the parties in a class action are minimally diverse—that is, where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

29. As set forth above, Plaintiff and Scholastic are citizens of different states. Therefore, minimal diversity of citizenship exists for this Court to have jurisdiction under 28 U.S.C. § 1332(d)(2).

**C. The Amount-in-Controversy Exceeds $5 Million**

30. Plaintiff alleges that Scholastic violated CEMA and CPA because it "initiated the transmission, conspired with another to initiate the transmission, or assisted the transition [sic.] of commercial electronic mail messages" that "contained false or misleading information in the subject line." Compl. ¶¶ 92-94, 102-104.

31. Plaintiff seeks remedies including (1) the greater of Plaintiff's actual damages

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

or liquidated damages of $500 per violation, (2) treble damages, (3) attorneys' fees and costs, and (4) injunctive relief. *Id.* ¶¶ 95, 105, p. 16 (Prayer for Relief).

32.     Plaintiff seeks actual damages or statutory damages of $500 per email that purportedly violates CPA, whichever is greater, in addition to treble damages and costs of the suit, including reasonable attorneys' fees. *Id.* ¶ 105.

33.     Plaintiff alleges that Scholastic sent at least eight (8) unlawful emails to members of the putative class, and that actual or liquidated damages should be awarded at "$500 per violation." *Id.* ¶¶ 39-62, 105.

34.     Scholastic denies that its email practices violated CEMA or CPA; Scholastic will show that Plaintiff's claims fail on the merits and that class certification is not appropriate in this action; and Scholastic further denies that Plaintiff or the alleged class are due any amount of damages, statutory, compensatory, or other otherwise.

35.     Nevertheless, assuming conservatively that each of the "thousands of members" (*i.e.*, at least two thousand) (*id.* ¶ 82) of the alleged class received at least eight promotional emails (*id.* ¶¶ 39-62), Plaintiff is seeking more than $5 million in statutory damages ($500 x 8 emails x 2,000 class members = $8,000,000). Accordingly, the amount-in-controversy requirement under 28 U.S.C. § 1332(d) is satisfied.[2]

**D.    All Other Removal Requirements Are Satisfied**

36.     CAFA jurisdiction does not apply where "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]" 28 U.S.C. § 1332(d)(5)(A). Scholastic is not a State, State official, or governmental entity.

37.     This Notice of Removal is timely filed. The Affidavit of Service states that

---

[2] Scholastic reserves the right to present additional evidence concerning Plaintiff's purported damages and the other elements of Plaintiff's requested relief, including injunctive relief and attorneys' fees, should Plaintiff contend that the amount-in-controversy requirement is not satisfied in this case. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy").

DEFENDANT'S NOTICE OF REMOVAL
Page 7

1    Scholastic was served via its registered agent on October 1, 2025.  *See* Ex. B.  Scholastic

2    denies that it was properly served. However, in an abundance of caution, Scholastic files this

3    Notice of Removal within thirty (30) days after the date on which the Affidavit of Service

4    contends that Scholastic was served with a copy of the initial pleading setting forth the claim

5    for relief upon which such action or proceeding is based; therefore it is considered timely.  28

6    U.S.C. § 1446(b) ("[t]he notice of removal of a civil action or proceeding shall be filed

7    within 30 days after the receipt by the defendant, through service or otherwise, of a copy of

8    the initial pleading setting forth the claim for relief upon which such action or proceeding is

9    based").

10        38.    Pursuant to 28 U.S.C. § 1446(a), contemporaneously with the filing of this

11   Notice of Removal in the United States District Court for the Western District of

12   Washington, written notice of such filing will be served by the undersigned on the Plaintiff's

13   Counsel of Record, and a copy of the Notice of Removal will be filed with the Clerk of the

14   Superior Court of the State of Washington, King County.

15        39.    By filing this Notice of Removal, Scholastic does not waive any defense and

16   instead reserves all such defenses, including but not limited to those related to lack of

17   personal jurisdiction.

18        **WHEREFORE**, for all the reasons stated above, this action is removable to this

19   Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and this Court may exercise

20   jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and/or (d)(2).

21

22

23

24

25

26

DEFENDANT'S NOTICE OF REMOVAL
Page 8

1    **WHEREFORE**, Scholastic gives notice that the matter bearing Case No. 25-2-

2  28762-9 SEA, pending in the Superior Court of the State of Washington, King County, is

3  removed to the United States District Court for the Western District of Washington.

4

5                                        Respectfully submitted,

6  DATED:  October 28, 2025            LAW OFFICE OF AMANDA BEANE, P.C.

7

8                              By:   */s/ Amanda Beane*
                                    Amanda Beane, WSBA No. 33070
9                                   7724 35th Ave NE, P.O. Box 15526
                                    Seattle, WA 98125
10                                  Tel. 206-531-0224
                                    amanda@amandabeanelaw.com
11

12

13                                  Caren Decter (*pro hac vice application
                                    forthcoming*)
14                                  Michael Salik (*pro hac vice application
                                    forthcoming*)
15                                  FRANKFURT KURNIT KLEIN + SELZ
                                    28 Liberty Street, 35th Fl.
16                                  New York, NY 10005
                                    Tel. (212) 980-0120
17                                  cdecter@fkks.com
                                    msalik@fkks.com
18

19                                  *Attorneys for Defendant Scholastic Inc.*

20

21

22

23

24

25

26

DEFENDANT'S NOTICE OF REMOVAL
Page 9

1

2                          **CERTIFICATE OF SERVICE**

3    The undersigned certifies that on the date below, I served the foregoing document via email

4   on counsel for Plaintiff:

5
           Samuel J. Strauss, WSBA No. 46971
6          **STRAUSS BORRELLI, LLP**
           980 N. Michigan Avenue, Ste. 1610
7          Chicago, IL 60611
           Tel.: (872) 263-1100
8          sam@straussborrelli.com
           raina@strausborrelli.com
9

10         *Attorneys for Plaintiff*

11   Executed this 28th day of October, 2025 at Spokane, Washington.

12

13   By:      */s/ Gretchen Barbieri*
           _____

14          R. Gretchen Barbieri, Paralegal

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S NOTICE OF REMOVAL
Page 10

# EXHIBIT A

1

2

3

4

5

6    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
7    FOR THE COUNTY OF KING

8    TRINA SAMSON, on her own behalf and on        Case No.: _____
     behalf of others similarly situated,
9
                    Plaintiff,                       CLASS ACTION COMPLAINT
10
            vs.                                      JURY TRIAL DEMANDED
11
     SCHOLASTIC INC.,
12
                    Defendant.
13

14

15         Plaintiff Trina Samson, on her own behalf and on behalf of others similarly situated, on

16   information and belief except to her own experiences and matters of public record, complains of

17   Defendant Scholastic Inc. ("Scholastic") as follows:

18                          I.       INTRODUCTION

19         1.      In 1998, to protect Washington consumers from the annoyance and harassment

20   caused by the burgeoning spam email industry, the Washington State Legislature enacted the

21   Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code

22   of Washington (RCW).

23

24

25                                                          **STRAUSS BORRELLI PLLC**
                                                            980 N Michigan Avenue, Suite 1610
     CLASS ACTION COMPLAINT          1                      Chicago, Illinois 60611-4501
                                                            TEL. 872.263.1100 • FAX
                                                            872.863.1109
                                                            straussborrelli.com

2.      Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3.      Defendant Scholastic engages in the precise activity which CEMA prohibits.

4.      Scholastic spams Washington consumers—including Plaintiff Trina Samson, a school librarian—with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds, and ultimately, from consumers' wallets.

5.      This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6.      And through this deceptive time-sensitivity, Scholastic falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7.      Plaintiff challenges Defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.      JURISDICTION AND VENUE

8.      The Court has jurisdiction of this case under RCW 2.08.010.

9.      Venue is proper in King County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in King County.

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

### III.    PARTIES

10.     Plaintiff Trina Samson is a resident of King County, Washington.

11.     Defendant Scholastic, Inc. is incorporated in Delaware with its principal address at 557 Broadway, New York, NY 10012.

12.     This Court has personal jurisdiction over Defendant, as its contacts are so "continuous and systematic as to render itself at home" in this State. *Downing v. Losvar*, 21 Wash. App. 2d 635, 657 (2022). Additionally, personal jurisdiction is proper because Defendant has "purposefully avail[ed] itself of the privilege of conducting activities within" this State. *Id.* at 663.

### IV.    FACTUAL ALLEGATIONS

**A.     CEMA protects Washington consumers from deceptive spam emails.**

13.     The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

14.     In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

15.     In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

16.     The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

17.     In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1   lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

2          18.    In 2012, one study estimated that Americans bear "costs of almost $20 billion

3   annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics*

4   *of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

5          19.    Even when bulk commercial email marketers are operating under color of consumer

6   consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice"

7   approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An*

8   *Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

9          20.    Consumers therefore routinely "consent" to receive flurries of commercial emails

10  which they did not meaningfully request and in which they have no genuine interest.

11         21.    This includes emails sent to consumers from businesses with which they have no

12  prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

13         22.    Simply conducting the routine affairs of daily life often exposes consumers to

14  unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address

15  for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce

16  you hand over your email address, companies often use it as an all-access pass to your inbox:

17  Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday

18  promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't*

19  *Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

20         23.    The Legislature presciently intended CEMA to "provide some immediate relief"

21  for these problems by prohibiting among other things commercial emails that "contain untrue or

22  misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23

24

25

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

24.     CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

25.     CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

26.     CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

27.     CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

28.     CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

29.     The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.      The subject lines of Scholastic's marketing emails make false time scarcity claims.**

30.     One common way online marketers "manipulate consumer choice by inducing false

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

31.    The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 30, at 22.

32.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 30, at 26.

33.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

34.    Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

35.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

36.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

37.    False time scarcity claims also harm market competition. Consumers learn to ignore

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

38.     These false time scarcity claims are a staple of the defendant's email scheme to compel consumers to purchase its products.

39.     **Urgent Spam Emails.** Scholastic is practiced in this trick of luring in consumers through urgent subject headings in emails that do not reflect the true availability of the deal itself, as the examples below demonstrate.

40.     For example, on July 17, 2024, Scholastic spammed consumers with emails containing subject lines personalized to the email recipient's first name, saying here, as to Plaintiff, " ⏳ 20% Off Expires Soon, Trina! ⏳ ," and "Trina, Your 20% OFF Code Ends TONIGHT!"

41.     But the 20% off deal did not end on July 17.

42.     The very next day, on July 18, 2024, Scholastic sent consumers another email, saying in the subject heading: "Ends Tomorrow! 20% OFF E.V.E.R.Y.T.H.I.N.G! 📖 🎨 ▮ ."

43.     And indeed, the 20% off deal that started on July 17, 2024 *actually ended* on July 19, 2024, as further advertised by Scholastic in a July 19 email saying in the subject line: "20% OFF Is Yours for ONE LAST DAY!"

44.     Scholastic's scheme of sending emails with personalized subject headings about deals that purportedly—but not factually—"end tonight" is familiar.

45.     In a recent instance, on March 19, 2025, Scholastic spammed consumers with emails containing subject lines personalized to the recipient's name, saying "Your 20% Off Ends Tonight, [Email Recipient First Name]!"

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

46.    But again, the 20% off deal did not end on March 19.

47.    On March 20, 2025, Scholastic continued the deal, as it announced in an email with the subject heading: "One More Day! 20% Off and …"

48.    Similarly, on September 25, 2024, Scholastic made another personalized call for urgent action, through an email with the subject heading, "[Email Recipient First Name], Your 15% Off Ends TODAY!"

49.    But that 15% off deal continued just two days later.

50.    On September 27, 2024, Scholastic spammed consumers with another personalized message in the subject line: "[Email Recipient First Name], Last Call for 15% Off!"

51.    Indeed, Scholastic repeatedly invokes the term "Last Call" to inspire same-day action by consumers.

52.    For example, on December 15, 2024, Scholastic spammed consumers with an email containing the subject heading: "Last Call! Up to 25% Off + Free Shipping."

53.    But December 15 was not the "last call" for the 25% deal.

54.    On the very next day, December 16, 2024, Scholastic bombarded consumers with another email making the same offer, in the subject line: "Today Only! 25% Off + Free Shipping for the Final Sale of the Season."

55.    In another variation on this deceptive scheme, Scholastic invokes *next day urgency*, as it did on September 1, 2024 in an email with the subject line: "Hurry, Up to $40 Off Ends Tomorrow!" And indeed, the fine print indicated that the deal "expire[d] on 9/2/24."

56.    But that wasn't true.

57.    On September 3, 2024, Scholastic sent consumers an email with the subject

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1    heading: "EXTENDED! Two More Days for Up to $40 OFF" for a deal, as noted in the fine print,

2    "expire[d] on 9/4/24."

3    58.    Indeed, Scholastic has a pattern of offering surprise extensions on deals it had

4    represented as over.

5    59.    For example, on October 9, 2024, Scholastic sent an email to consumers with the

6    headline: "[Email Recipient First Name], Your 25% OFF Code Ends TONIGHT!"

7    60.    And the very next day, on October 10, 2024, it sent an email with the subject

8    heading: "Surprise! Your 25% OFF is Back for TWO DAYS ONLY!"

9    61.    And again, on November 11, 2024, Scholastic spammed an email to consumers,

10    saying in the subject heading: "Less Than 24 Hours: Up to $40 Off!"

11    62.    Yet, *more than 24 hours later*, on November 12, 2024, the deal was still on—as

12    Scholastic announced in another personalized message, stating in the subject line: "[Email

13    Recipient First Name], Up to $40 Off Extended!"

14    63.    These examples of the commercial emails that Scholastic has sent consumers

15    containing subject lines with false or misleading statements are attached to this Class Action

16    Complaint as Exhibit A.

17    **C.    Scholastic knows when it sends emails to Washington residents.**

18    64.    A sophisticated commercial enterprise, like Scholastic, which is engaged in

19    persistent marketing through mass email campaigns across the United States, has several ways of

20    knowing where the recipients of its marketing emails are located. The means it employs are

21    peculiarly within its knowledge.

22    65.    First, the sheer volume of email marketing that Scholastic engages in put it on

23

24

25

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

notice that Washington residents would receive its emails.

66. Second, Scholastic may obtain location information tied to email addresses when consumers make purchases from Scholastic through digital platforms, including the Scholastic website, or otherwise self-report such information to Scholastic.

67. Third, Scholastic may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

68. Specifically, Scholastic likely uses Adobe Campaign to manage its email marketing campaigns. This platform should allow Scholastic to access a list of every email address that was sent a marketing email. It should also allow Scholastic to determine who viewed the emails and who clicked on any links within them.

69. Scholastic is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

70. Fourth, Scholastic may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

71. Fifth, Scholastic may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

72. Sixth, Scholastic may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

73.    It is thus highly probable that a seller with the size and sophistication of Scholastic employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.    Scholastic violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

74.    Scholastic has spammed Plaintiff Trina Samson, a school librarian, with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

75.    Plaintiff received email promotions described above in Section B, including the July 17, 2025 emails containing subject lines saying, "⌛ 20% Off Expires Soon, Trina! ⌛" and "Trina, Your 20% OFF Code Ends TONIGHT!"

76.    These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein.

77.    These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

**V.    CLASS ALLEGATIONS**

78.    Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1    All Washington citizens holding an email address to which

2    Defendant sent or caused to be sent any email listed in Exhibit A

3    during the Class Period.

4    79.    Excluded from this definition of the Class are Defendant's officers, directors, and

5    employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a

6    controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this

7    action may be assigned, as well as their immediate family members.

8    80.    The Class Period extends from the date four years before this Class Action

9    Complaint is filed to the date a class certification order is entered in this action.

10    81.    Plaintiff reserves the right to amend the Class definition as discovery reveals

11    additional emails containing false or misleading information in the subject line that Defendant sent

12    or caused to be sent during the Class Period to email addresses held by Washington residents.

13    82.    The Class is so numerous that joinder of all members is impracticable because the

14    Class is estimated to minimally contain thousands of members.

15    83.    There are questions of law or fact common to the class, including without limitation

16    whether Defendant sent commercial emails containing false or misleading information in the

17    subject line; whether Defendant sent such emails to email addresses it knew or had to reason to

18    know were held by Washington residents; whether Defendant's conduct violated CEMA; whether

19    Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act,

20    RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

21    84.    Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff

22    and Class members share the same statutory rights under CEMA and the CPA, which Defendant

23

24

25    CLASS ACTION COMPLAINT                    12

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1   violated in the same way by the uniform false or misleading marketing messages it sent to all

2   putative members.

3       85.    Plaintiff will fairly and adequately protect the Class's interests because, among

4   other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading

5   marketing; have no interest adverse to the Class; and have retained competent counsel extensively

6   experienced in consumer protection and class action litigation.

7       86.    Defendant has acted on grounds generally applicable to the Class, in that, among

8   other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff

9   and the Class, which violate CEMA and the CPA in the same way, and from which it may be

10  enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief

11  with respect to the Class as a whole.

12      87.    The questions of law or fact common to the members of the Class predominate over

13  any questions affecting only individual members, in that, among other ways, Defendant has

14  violated their rights under the same laws by the same conduct, and the only matters for individual

15  determination are the number of false or misleading emails received by each Class member and

16  that Class member's resulting damages.

17      88.    A class action is superior to other available methods for the fair and efficient

18  adjudication of the controversy because, among other reasons, the claims at issue may be too small

19  to justify individual litigation and management of this action as a class presents no special

20  difficulties.

21

22

23

24

25  CLASS ACTION COMPLAINT                    13

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

# VI.    CLAIMS TO RELIEF

## First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

89.    Plaintiff incorporates and realleges paragraphs 1–77 above.

90.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

91.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

92.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

93.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

94.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

95.     For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

### Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

96.     Plaintiff incorporates and realleges paragraphs 1–77 above.

97.     The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

98.     A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

99.     A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

100.     CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

101.     Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

102.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

103.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1  Defendant knew, or had reason to know, were held by Washington residents.

2      104.    Defendant initiated the transmission, conspired with another to initiate the

3  transmission, or assisted the transmission of such messages that contained false or misleading

4  information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

5      105.    For Defendant's violation of the CPA, Plaintiff and putative members are entitled

6  to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated

7  damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

8  **VII.   JURY DEMAND**

9      106.    Plaintiff will demand a jury trial by separate document in accordance with Local

10  Civil Rule 38(b).

11  **VIII.   PRAYER FOR RELIEF**

12  Plaintiff asks that the Court:

13      A.    Certify the proposed Class, appoint Plaintiff as Class representative, and appoint

14  undersigned counsel as Class counsel;

15      B.    Enter a judgment in Plaintiff's and the Class's favor permanently enjoining

16  Defendant from the unlawful conduct alleged;

17      C.    Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated

18  damages, trebled, according to proof;

19      D.    Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

20      E.    Order such further relief the Court finds appropriate.

21

22  *[Attorney signature block to follow on next page.]*

23

24

25

    **STRAUSS BORRELLI PLLC**
    980 N Michigan Avenue, Suite 1610
    Chicago, Illinois 60611-4501
    TEL. 872.263.1100 • FAX
    872.863.1109
    straussborrelli.com

CLASS ACTION COMPLAINT       16

1   DATE:  September 30, 2025                    Respectfully submitted,

2                                               /s/ *Samuel J. Strauss*
                                                Samuel J. Strauss, WSBA No. 46971
3                                               Raina C. Borrelli*
                                                **STRAUSS BORRELLI, LLP**
4                                               980 N. Michigan Avenue, Suite 1610
                                                Chicago, IL 60611
5                                               Tel.: (872) 263-1100
                                                sam@straussborrelli.com
6                                               raina@straussborrelli.com

7                                               Lynn A. Toops*
                                                Natalie A. Lyons*
8                                               Ian R. Bensberg*
                                                **COHENMALAD, LLP**
9                                               One Indiana Square, Suite 1400
                                                Indianapolis, IN 46204
10                                              Tel.: (317) 636-6481
                                                ltoops@cohenmalad.com
11                                              ibensberg@cohenmalad.com

12                                              Gerard J. Stranch, IV*
                                                Michael C. Tackeff*
13                                              Andrew K. Murray*
                                                **STRANCH, JENNINGS &**
14                                              **GARVEY, PLLC**
                                                223 Rosa L. Parks Avenue, Suite 200
15                                              Nashville, TN 37203
                                                Tel.: (615) 254-8801
16                                              gstranch@stranchlaw.com
                                                mtackeff@stranchlaw.com
17                                              amurray@stranchlaw.com

18                                              *Attorneys for Plaintiff*

19                                              * Applications for admission *pro hac
20                                              vice* forthcoming

21

22

23

24                                                              **STRAUSS BORRELLI PLLC**
                                                                980 N Michigan Avenue, Suite 1610
                                                                Chicago, Illinois 60611-4501
25                                                              TEL. 872.263.1100 • FAX
                                                                872.863.1109
    CLASS ACTION COMPLAINT           17                         straussborrelli.com

— **EXHIBIT A** —

IIN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

TRINA SAMSON, on her own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

SCHOLASTIC INC.,

Defendant.

Case No.: _____

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
|------|--------------|
| March 19, 2025 | "Your 20% Off Ends Tonight, [Email Recipient First Name]!" |
| December 15, 2024 | "Last Call! Up to 25% Off + Free Shipping" |
| November 11, 2024 | "Less Than 24 Hours: Up to $40 Off!" |
| October 9, 2024 | "[Email Recipient First Name], Your 25% OFF Code Ends TONIGHT!" |
| September 25, 2024 | "[Email Recipient First Name], Your 15% Off Ends TODAY!" |
| September 1, 2024 | "Hurry, Up to $40 Off Ends Tomorrow!"" |
| July 17, 2024 | " ⏳ 20% Off Expires Soon, [Email Recipient First Name]! ⏳ " |
| July 17, 2024 | "[Email Recipient First Name], Your 20% OFF Code Ends TONIGHT!" |

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

CLASS ACTION COMPLAINT - EX. A

1

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR THE COUNTY OF
KING

**TRINA SAMSON, on her own behalf and on behalf of others**
**similarly situated**

    *Plaintiff(s) / Petitioner(s)*

Case No.: 25-2-28762-9 SEA

v.

**SCHOLASTIC INC.**

    *Defendant(s) / Respondent(s)*

<u>**AFFIDAVIT OF SERVICE**</u>

I, Karen Wolcott, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a
party to this action.

I served the following documents to SCHOLASTIC INC. in Thurston County, WA on October 1, 2025 at
10:20 am at 300 DESCHUTES WAY SW, STE 208 MC-CSC1, TUMWATER, WA 98501 by leaving the
following documents with  who as  at CSC is authorized by appointment or by law to receive service of
process for SCHOLASTIC INC..

2025-09-30 - Case Information Cover Sheet & Area Designation.pdf
2025-09-30 - Jury Demand.pdf
2025-09-30 - Order Setting Civil Case Schedule.pdf
2025-09-30 - Plaintiff's Case Information Cover Sheet & Area Designation.pdf
2025-09-30 - Summons.pdf
2025-09-30 - Class Action Complaint.pdf

, est. age Unknown, glasses: N,  hair, , .
Geolocation of Serve: https://google.com/maps?q=47.013151,-122.9054633
Photograph: See Exhibit 1

Total Cost: $127.00

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF
WASHINGTON THAT THE FACTS HEREIN ARE TRUE AND CORRECT.

/s/ *Karen Wolcott*

| | |
|---|---|
| Executed in | Signature |
|   Thurston County | Karen Wolcott |
|   WA   on  10/3/2025 | +1 (360) 448-1014 |
| | 25-0114-02 |

