IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| TRINA SAMSON, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCHOLASTIC INC.,<br><br>Defendant. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Trina Samson, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Scholastic Inc. ("Scholastic") as follows:

**I.   INTRODUCTION**

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

CLASS ACTION COMPLAINT                    1

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendant Scholastic engages in the precise activity which CEMA prohibits.

4. Scholastic spams Washington consumers—including Plaintiff Trina Samson, a school librarian—with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds, and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Scholastic falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

7. Plaintiff challenges Defendant's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.     JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in King County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in King County.

CLASS ACTION COMPLAINT                          2

### III. PARTIES

10. Plaintiff Trina Samson is a resident of King County, Washington.

11. Defendant Scholastic, Inc. is incorporated in Delaware with its principal address at 557 Broadway, New York, NY 10012.

12. This Court has personal jurisdiction over Defendant, as its contacts are so "continuous and systematic as to render itself at home" in this State. *Downing v. Losvar*, 21 Wash. App. 2d 635, 657 (2022). Additionally, personal jurisdiction is proper because Defendant has "purposefully avail[ed] itself of the privilege of conducting activities within" this State. *Id.* at 663.

### IV. FACTUAL ALLEGATIONS

**A. CEMA protects Washington consumers from deceptive spam emails.**

13. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

14. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

15. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

16. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

17. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject

CLASS ACTION COMPLAINT 3

Strauss Borrelli PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

18. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

19. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

20. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

21. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

22. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

23. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

CLASS ACTION COMPLAINT    4

Strauss Borrelli PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

24. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

25. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

26. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

27. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

28. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

29. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.  The subject lines of Scholastic's marketing emails make false time scarcity claims.**

30. One common way online marketers "manipulate consumer choice by inducing false

CLASS ACTION COMPLAINT 5

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

1  beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

31. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 30, at 22.

32. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 30, at 26.

33. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

34. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

35. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

36. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

37. False time scarcity claims also harm market competition. Consumers learn to ignore

CLASS ACTION COMPLAINT                                6

scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

38. These false time scarcity claims are a staple of the defendant's email scheme to compel consumers to purchase its products.

39. **Urgent Spam Emails.** Scholastic is practiced in this trick of luring in consumers through urgent subject headings in emails that do not reflect the true availability of the deal itself, as the examples below demonstrate.

40. For example, on July 17, 2024, Scholastic spammed consumers with emails containing subject lines personalized to the email recipient's first name, saying here, as to Plaintiff, "⌛ 20% Off Expires Soon, Trina! ⌛," and "Trina, Your 20% OFF Code Ends TONIGHT!"

41. But the 20% off deal did not end on July 17.

42. The very next day, on July 18, 2024, Scholastic sent consumers another email, saying in the subject heading: "Ends Tomorrow! 20% OFF E.V.E.R.Y.T.H.I.N.G! 📖 📚 📕."

43. And indeed, the 20% off deal that started on July 17, 2024 *actually ended* on July 19, 2024, as further advertised by Scholastic in a July 19 email saying in the subject line: "20% OFF Is Yours for ONE LAST DAY!"

44. Scholastic's scheme of sending emails with personalized subject headings about deals that purportedly—but not factually—"end tonight" is familiar.

45. In a recent instance, on March 19, 2025, Scholastic spammed consumers with emails containing subject lines personalized to the recipient's name, saying "Your 20% Off Ends Tonight, [Email Recipient First Name]!"

CLASS ACTION COMPLAINT              7

46. But again, the 20% off deal did not end on March 19.

47. On March 20, 2025, Scholastic continued the deal, as it announced in an email with the subject heading: "One More Day! 20% Off and …"

48. Similarly, on September 25, 2024, Scholastic made another personalized call for urgent action, through an email with the subject heading, "[Email Recipient First Name], Your 15% Off Ends TODAY!"

49. But that 15% off deal continued just two days later.

50. On September 27, 2024, Scholastic spammed consumers with another personalized message in the subject line: "[Email Recipient First Name], Last Call for 15% Off!"

51. Indeed, Scholastic repeatedly invokes the term "Last Call" to inspire same-day action by consumers.

52. For example, on December 15, 2024, Scholastic spammed consumers with an email containing the subject heading: "Last Call! Up to 25% Off + Free Shipping."

53. But December 15 was not the "last call" for the 25% deal.

54. On the very next day, December 16, 2024, Scholastic bombarded consumers with another email making the same offer, in the subject line: "Today Only! 25% Off + Free Shipping for the Final Sale of the Season."

55. In another variation on this deceptive scheme, Scholastic invokes *next day urgency*, as it did on September 1, 2024 in an email with the subject line: "Hurry, Up to $40 Off Ends Tomorrow!" And indeed, the fine print indicated that the deal "expire[d] on 9/2/24."

56. But that wasn't true.

57. On September 3, 2024, Scholastic sent consumers an email with the subject

CLASS ACTION COMPLAINT  8

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

heading: "EXTENDED! Two More Days for Up to $40 OFF" for a deal, as noted in the fine print, "expire[d] on 9/4/24."

58. Indeed, Scholastic has a pattern of offering surprise extensions on deals it had represented as over.

59. For example, on October 9, 2024, Scholastic sent an email to consumers with the headline: "[Email Recipient First Name], Your 25% OFF Code Ends TONIGHT!"

60. And the very next day, on October 10, 2024, it sent an email with the subject heading: "Surprise! Your 25% OFF is Back for TWO DAYS ONLY!"

61. And again, on November 11, 2024, Scholastic spammed an email to consumers, saying in the subject heading: "Less Than 24 Hours: Up to $40 Off!"

62. Yet, *more than 24 hours later*, on November 12, 2024, the deal was still on—as Scholastic announced in another personalized message, stating in the subject line: "[Email Recipient First Name], Up to $40 Off Extended!"

63. These examples of the commercial emails that Scholastic has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.  Scholastic knows when it sends emails to Washington residents.**

64. A sophisticated commercial enterprise, like Scholastic, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

65. First, the sheer volume of email marketing that Scholastic engages in put it on

CLASS ACTION COMPLAINT          9

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

notice that Washington residents would receive its emails.

66. Second, Scholastic may obtain location information tied to email addresses when consumers make purchases from Scholastic through digital platforms, including the Scholastic website, or otherwise self-report such information to Scholastic.

67. Third, Scholastic may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

68. Specifically, Scholastic likely uses Adobe Campaign to manage its email marketing campaigns. This platform should allow Scholastic to access a list of every email address that was sent a marketing email. It should also allow Scholastic to determine who viewed the emails and who clicked on any links within them.

69. Scholastic is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

70. Fourth, Scholastic may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

71. Fifth, Scholastic may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

72. Sixth, Scholastic may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

73. It is thus highly probable that a seller with the size and sophistication of Scholastic employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

### D. Scholastic violated Plaintiff's right under CEMA to be free from deceptive commercial emails.

74. Scholastic has spammed Plaintiff Trina Samson, a school librarian, with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

75. Plaintiff received email promotions described above in Section B, including the July 17, 2025 emails containing subject lines saying, "⏳ 20% Off Expires Soon, Trina! ⏳" and "Trina, Your 20% OFF Code Ends TONIGHT!"

76. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as described herein.

77. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

### V. CLASS ALLEGATIONS

78. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

CLASS ACTION COMPLAINT    11

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

79. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

80. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

81. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

82. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

83. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

84. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant

CLASS ACTION COMPLAINT — 12

violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

85. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

86. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

87. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

88. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

CLASS ACTION COMPLAINT — 13

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

# VI.   CLAIMS TO RELIEF

## First Claim to Relief

## Violation of the Commercial Electronic Mail Act, RCW 19.190.020

89. Plaintiff incorporates and realleges paragraphs 1–77 above.

90. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

91. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

92. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

93. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

94. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

CLASS ACTION COMPLAINT                      14

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

95. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

96. Plaintiff incorporates and realleges paragraphs 1–77 above.

97. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

98. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

99. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

100. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

101. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

102. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

103. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that

CLASS ACTION COMPLAINT                 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

Defendant knew, or had reason to know, were held by Washington residents.

104. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

105. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

106. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Attorney signature block to follow on next page.]*

CLASS ACTION COMPLAINT — 16

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

| | | |
|---|---|---|
| 1 | DATE: September 30, 2025 | Respectfully submitted, |
| 2 | | /s/ *Samuel J. Strauss* |
| | | Samuel J. Strauss, WSBA No. 46971 |
| 3 | | Raina C. Borrelli* |
| | | **STRAUSS BORRELLI, LLP** |
| 4 | | 980 N. Michigan Avenue, Suite 1610 |
| | | Chicago, IL 60611 |
| 5 | | Tel.: (872) 263-1100 |
| | | sam@straussborrelli.com |
| 6 | | raina@straussborrelli.com |
| 7 | | Lynn A. Toops* |
| | | Natalie A. Lyons* |
| 8 | | Ian R. Bensberg* |
| | | **COHENMALAD, LLP** |
| 9 | | One Indiana Square, Suite 1400 |
| | | Indianapolis, IN 46204 |
| 10 | | Tel.: (317) 636-6481 |
| | | ltoops@cohenmalad.com |
| 11 | | ibensberg@cohenmalad.com |
| 12 | | Gerard J. Stranch, IV* |
| | | Michael C. Tackeff* |
| 13 | | Andrew K. Murray* |
| | | **STRANCH, JENNINGS &** |
| 14 | | **GARVEY, PLLC** |
| | | 223 Rosa L. Parks Avenue, Suite 200 |
| 15 | | Nashville, TN 37203 |
| | | Tel.: (615) 254-8801 |
| 16 | | gstranch@stranchlaw.com |
| | | mtackeff@stranchlaw.com |
| 17 | | amurray@stranchlaw.com |
| 18 | | |
| | | *Attorneys for Plaintiff* |
| 19 | | |
| | | * Applications for admission *pro hac* |
| 20 | | *vice* forthcoming |

CLASS ACTION COMPLAINT                    17

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX
872.863.1109
straussborrelli.com

— **EXHIBIT A** —

IIN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

TRINA SAMSON, on her own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

SCHOLASTIC INC.,

Defendant.

Case No.: _____

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
|---|---|
| March 19, 2025 | "Your 20% Off Ends Tonight, [Email Recipient First Name]!" |
| December 15, 2024 | "Last Call! Up to 25% Off + Free Shipping" |
| November 11, 2024 | "Less Than 24 Hours: Up to $40 Off!" |
| October 9, 2024 | "[Email Recipient First Name], Your 25% OFF Code Ends TONIGHT!" |
| September 25, 2024 | "[Email Recipient First Name], Your 15% Off Ends TODAY!" |
| September 1, 2024 | "Hurry, Up to $40 Off Ends Tomorrow!"" |
| July 17, 2024 | "⏳ 20% Off Expires Soon, [Email Recipient First Name]! ⏳" |
| July 17, 2024 | "[Email Recipient First Name], Your 20% OFF Code Ends TONIGHT!" |

CLASS ACTION COMPLAINT - EX. A

1

**Strauss Borrelli PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com