HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

TRINA SAMSON, on her own behalf, and on behalf of others similarly situated,

Plaintiff,

v.

SCHOLASTIC INC.,

Defendant.

Case No. 2:25−cv−02115−JNW

**DEFENDANT'S MOTION TO TRANSFER VENUE**

**NOTE ON MOTION CALENDAR: APRIL 20, 2026**

Defendant Scholastic Inc. ("Scholastic") respectfully moves to transfer this action to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

Plaintiff sued Scholastic in the wrong state. Plaintiff filed this lawsuit in Washington alleging that certain of Scholastic's marketing emails violate Washington's Commercial Electronic Mail Act ("CEMA"). But Plaintiff previously agreed to Scholastic's terms of use, which requires that disputes with Scholastic would be subject to exclusive jurisdiction in the federal or state courts of New York. The Court must transfer this case to the Southern District of New York, where Plaintiff can continue to pursue her claims.

That agreement controls here. Under settled Supreme Court and Ninth Circuit authority, a valid forum-selection clause *must* be enforced in all but the most exceptional cases. This is not

DEFENDANT'S MOTION TO TRANSFER
Page 1

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

such a case. Plaintiff assented to a straightforward clickwrap agreement that provided clear notice of the Terms of Use and required unambiguous manifestation of assent before she could proceed. Her claims arise directly from the relationship governed by those terms, and there are no extraordinary circumstances that could justify disregarding the parties' chosen forum.  The Court must therefore enforce Plaintiff's agreement and transfer this action to the Southern District of New York.

## RELEVANT BACKGROUND

The relevant facts are straightforward and undisputed. Scholastic is a New York-based publishing, education, and media company that provides educators with access to products and programs through its website. Declaration of Avery Gross ("Decl.") ¶ 4. Plaintiff maintained an online MyScholastic account through which she provided account information, accessed Scholastic's website, and placed online orders.

As part of maintaining and using that account, Plaintiff was required, on an annual basis, to review her MyScholastic profile information **and affirmatively agree by checking a box stating that she had read and accepted Scholastic's Terms of Use and Privacy Policy**. The Terms of Use that Plaintiff accepted contained a mandatory forum-selection clause designating New York courts.

### A.    PLAINTIFF'S "MYSCHOLASTIC" ACCOUNT

Scholastic offers a range of products and services through its website, including those designed for teachers like Plaintiff. Decl. ¶ 4. Users may create an online MyScholastic account, which enables them to make purchases from the online store and participate in various programs. Decl. ¶ 4.

One such program, "Book Clubs", allows teachers and students to place orders online using a class code. Decl. ¶ 4. Orders are aggregated and then shipped to the school. Decl. ¶ 4.

Plaintiff maintains at least one MyScholastic account enrolled in the Book Clubs program. Decl. ¶ 8. Her account profile lists her name, email address, and information about her school, role, and grade she teaches. Decl. ¶¶ 8-9.

DEFENDANT'S MOTION TO TRANSFER
Page 2

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

B.     **PLAINTIFF AFFIRMATIVELY ASSENTED TO SCHOLASTIC'S TERMS OF USE**

Participation in the Book Clubs program requires teachers like Plaintiff to update their account information each school year and confirm acceptance of Scholastic's Terms of Use and Privacy Policy. Decl. ¶¶ 5-7.

For example, Plaintiff first accessed the Book Clubs program for the 2018–2019 school year on October 4, 2018, by logging into her account. Decl. ¶ 8. Upon logging in, she was presented with the following pop-up screen prompting her to review and, if necessary, update her profile information:



Decl. ¶ 9.

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

At the bottom of this form, Plaintiff was required to check a box next to the statement, "I have read and accept the Terms of Use and Privacy Policy." Decl. ¶¶ 9-10. The phrase "Terms of Use" appeared as a hyperlink to the full text of Scholastic's Terms of Use, Decl. ¶ 11 & Ex. A, and was displayed in capitalized, blue text:



Decl. ¶¶ 9-10.

The notice and checkbox was placed directly above a "Continue to Site" button. Decl. ¶¶ 9-10 . Plaintiff could not proceed without first checking the box indicating her acceptance of Scholastic's Terms of Use. Decl. ¶ 10. Scholastic's records reflect that Plaintiff checked the Terms of Use acceptance box on October 4, 2018. Decl. ¶ 12.

Plaintiff subsequently placed a Book Clubs order on October 9, 2018. Decl. ¶ 13. Placement of that order required completion of the process described above, including Plaintiff's acceptance of Scholastic's Terms of Use. Decl. ¶ 13.

C.    THE MANDATORY FORUM SELECTION CLAUSE

Scholastic's Terms of Use in effect in 2018 included a mandatory forum-selection clause that stated: "***You and Scholastic each agree to submit to the exclusive jurisdiction of the courts of the state of New York and the federal courts of the southern district of New York***." Decl. Ex. A (emphasis added).[1] The Terms of Use also include a choice-of-law provision that stated: "This

---

[1] Scholastic's representative obtained the operative 2018 Terms of Use from the Internet Archive's Wayback Machine and authenticated its contents. Decl. ¶ 11; *see Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1194 (W.D. Wash. 2024) (citing Fed. R. Evid. 901(a)) (considering authenticated documents obtained from the Wayback Machine). In addition, this Court may independently take judicial notice of documents retrieved through the Wayback Machine, as courts regularly do in this Circuit. *See id.* at 1194 n.3 (collecting cases).

DEFENDANT'S MOTION TO TRANSFER
Page 4

Agreement shall be governed by and construed in accordance with the laws of the state of New York, without giving effect to any principles of conflicts of law." Decl. Ex. A .

### ARGUMENT

Plaintiff filed suit in the wrong state. When Plaintiff first accessed the Book Clubs program for the 2018–2019 school year on October 4, 2018, she checked a box confirming her agreement to Scholastic's Terms of Use, including the mandatory forum-selection clause contained therein. That forum selection clause requires litigation of all disputes between Plaintiff and Scholastic in "the courts of the state of New York and the federal courts of the southern district of New York."

The Supreme Court has explained that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quotation omitted). The procedure for enforcing such a clause is "a motion to transfer under § 1404(a)[.]" *Id.* at 52; *see* 28 U.S.C. § 1404(a) (permitting transfer "to any district . . . to which all parties have consented"). When a defendant files such a motion, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52 (emphasis added). This case does not present any extraordinary circumstances, and the lawsuit should be transferred to the Southern District of New York.

A. **PLAINTIFF AFFIRMATIVELY AGREED TO THE FORUM SELECTION CLAUSE**

Scholastic's Terms of Use—and the mandatory forum selection clause contained therein—is a classic example of a binding online contract that courts regularly enforce.

In the "online world," normal state-law principles of contract formation apply. *Berman v.*

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

*Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).[2] Contract formation requires mutual assent. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177 (2004). "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract," and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016); *see Berman*, 30 F.4th at 856 ("[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."); *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024) ("In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." (quoting *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019)).

Courts confronted with online agreements have devised rules to determine whether meaningful assent has been given. These courts have designated two types of online agreements: clickwrap and browsewrap. *See, e.g.*, *Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *2 (W.D. Wash. Aug. 6, 2019) (describing both types of agreements). In "browsewrap" agreements, the terms are disclosed through a hyperlink at the bottom of the screen. *Id.* Courts are more "reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman*, 30 F.4th at 856.

At the other end of the spectrum are clickwrap agreements like Scholastic's Terms of Use, which courts consistently enforce. "Clickwrap" agreements require users to accept a website's terms of use by checking a box. *Id.* When a consumer signifies their assent by checking a box, "the consumer has received notice of the terms being offered and ... 'knows or

---

[2] While Scholastic's Terms of Use has a New York governing law clause, there is no material difference between Washington and New York law on online contract formation. *LeDoux v. Outliers, Inc.*, 2025 WL 523908, at *5 (W.D. Wash. Feb. 18, 2025).

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

has reason to know that the other party may infer from his conduct that he assents' to those terms." *Id.* (quoting Rest. 2d of Contracts § 19(2)). For this reason, courts "routinely" find clickwrap agreements enforceable, as they provide reasonably "conspicuous" notice and require clear assent. *Id.*; *see, e.g.*, *In re Wyze Data Incident Litigation*, 2020 WL 6202724, at *3 (W.D. Wash. Oct. 22, 2020) (enforcing clickwrap agreement). As the Ninth Circuit has explained, "clickwrap is the safest choice" to "ensure that an online agreement passes muster." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023).

Here, Scholastic's Terms of Use are a classic clickwrap agreement that provides users with reasonably conspicuous notice of the hyperlinked Terms of Use and requires users to check a box manifesting their assent to those terms. Accordingly, the Terms of Use are enforceable and this action must be transferred to the Southern District of New York consistent with the mandatory forum selection clause.

Reasonably conspicuous notice. Notice of terms is reasonably conspicuous if it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. Hyperlinked terms constitute notice, but "the fact that a hyperlink is present must be readily apparent." *Id.* at 857. "Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Id.*

Here, Scholastic provided an obvious "Terms of Use" hyperlink that led to the full text of the terms while expressly informing Plaintiff that she must "read" and "agree" to those terms before proceeding. The phrase "Terms of Use" was hyperlinked in capitalized, blue font, and prominently displayed in the sentence, "I have read and accept the Terms of Use and Privacy Policy." Decl. ¶¶ 9-10. This sentence was placed next to a checkbox that Plaintiff *had to click* before she could proceed to access her Book Clubs account, Decl. ¶¶ 9-10, ensuring that Plaintiff *would have had to direct her attention to that sentence* before continuing. Clicking on the hyperlink would have directed Plaintiff to a page with the text of the full Terms of Use that she

DEFENDANT'S MOTION TO TRANSFER
Page 7

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

could then review. Decl. ¶ 11. Moreover, the checkbox and sentence were placed directly above the "Continue to Site" button that Plaintiff had to click to access her Book Club account and place an order. Decl. ¶ 9. Finally, the page was simple and uncluttered. It was focused solely on the profile review popup, with the rest of the website darkened in the background, and did not contain extraneous photos, links, or promotional material. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (enforcing online contract where sign up page lacked "clutter").

Courts in this district "consistently" enforce nearly identical clickwrap agreements. *Wyze*, 2020 WL 6202724, at *2. In *Wyze*, for example, the court held that a clickwrap agreement with a checkbox and accompanying text stating, "I agree to the Terms of Conditions," gave reasonably conspicuous notice and created an enforceable agreement, and this clickwrap agreement is virtually identical to Scholastic's:

 

Mot. to Compel, Ex. A, Dkt. 25-1, Case No. 2:20-cv-00282-JCC, *In re Wyze Data Incident Litigation* (W.D. Wash. July 22, 2020); 2020 WL 6202724, at *3; Decl. ¶ 9. Indeed, Scholastic's

DEFENDANT'S MOTION TO TRANSFER
Page 8

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

presentation was even *more* conspicuous. Scholastic's language expressly directed Plaintiff to "*read*" the terms of use, and further was placed *directly* above the "Continue to Site" button.

Unambiguous manifestation of assent. Plaintiff also affirmatively manifested assent by clicking the checkbox next to the text, "I have read and accept the Terms of Use." Decl. ¶¶ 10, 12. Courts "routinely" find that clicking such a box constitutes binding assent. *Berman*, 30 F.4th at 856; *see e.g.*, *Wyze*, 2020 WL 6202724, at *3 (holding same for virtually identical presentation under Washington law); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1189, 1199 (W.D. Wash. 2024) (noting courts "routinely" enforce clickwraps).

Plaintiff therefore unambiguously agreed to, and is bound by, the Terms of Use and the mandatory forum selection clause contained therein.

**B.      THE COURT SHOULD TRANSFER THIS MATTER TO THE SOUTHERN DISTRICT OF NEW YORK**

A forum-selection clause "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)" and must be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59–60 (quotation omitted). The party challenging a mandatory forum selection clause bears a heavy burden of establishing the grounds for rejecting its enforcement. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). Forum selection clauses should only be set aside if the party challenging enforcement can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

Specifically, a forum selection clause *will be enforced* unless one of three exceptions apply: (1) its inclusion in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court; or (3) enforcement would contravene a strong public policy of the forum in which suit is brought. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018).

Here, no exceptional circumstances are present, so the forum-selection clause controls and the case must be transferred to the Southern District of New York.

DEFENDANT'S MOTION TO TRANSFER
Page 9

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

*First*, Plaintiff's claims fall within the forum-selection clause. The forum-selection clause states: "You and Scholastic each agree to submit to the exclusive jurisdiction of the courts of the state of New York and the federal courts of the southern district of New York." That language is mandatory, sweeping, and not limited to any particular claim type; it therefore encompasses the claims asserted here. Courts have enforced materially similar forum-selection clauses in online agreements against statutory and unfair-business-practices claims. In *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157 (E.D. Cal. 2003), for example, the plaintiff entered an online contract and later brought claims for unfair business practices and statutory violations. *Id.* at 1158. The online contract's forum selection clause stated: "[Plaintiff] hereby consent[s] to the exclusive jurisdiction of the state and federal courts sitting in the State of Washington." *Id.* The court held that "it must honor the parties' agreed upon choice of forum." *Id.* at 1163. Scholastic's forum selection clause is no different. *See also, e.g.*, *Wyttmab LLC v. GoDaddy.com LLC*, 2020 WL 6887956, at *1, 3 (W.D. Wash. Nov. 24, 2020) (enforcing similarly broad mandatory forum selection clause in online terms of service); *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 361-62 (S.D.N.Y. 2014) (same); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010) (same), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), *and aff'd in part*, 435 F. App'x 31 (2d Cir. 2011); *Willard v. Ainsworth Game Tech., Inc.*, 2020 WL 13532378, at *2 (W.D. Wash. July 31, 2020) (enforcing similar mandatory forum selection clause).

*Second*, Plaintiff cannot satisfy the heavy burden necessary to overcome the forum selection clause. None of the three narrow exceptions apply here. Plaintiff does not allege that the forum selection clause is fraudulent; nor does the Complaint even reference the forum selection clause. *See Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*, 2022 WL 19405239, at *4 (C.D. Cal. Feb. 2, 2022) (enforcing clause when "the complaint [did] not even mention the forum selection clause"). Plaintiff also cannot demonstrate that she will be deprived of her day in court. *See M/S Bremen*, 407 U.S. at 18 ("[T]he party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."). Any "financial hardship and

DEFENDANT'S MOTION TO TRANSFER
Page 10

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

the inconvenience of litigating in a distant forum should not be considered in evaluating whether a forum selection clause is enforceable except in unusual or exceptional cases." *Baga v. ePlus Tech., Inc.*, 2017 WL 2774088, at *3 (W.D. Wash. June 27, 2017).

Finally, enforcement would not contravene any strong public policy of the State of Washington. Public policy reflected in a state statute has "no bearing on whether the parties' valid, bargained-for forum selection clause should apply"; a plaintiff who files suit in violation of a forum selection clause enjoys no "privilege" with respect to choice of forum, and therefore is entitled to no concomitant "state-law advantages." *Sun v. Kao*, 170 F. Supp. 3d 1321, 1326 (W.D. Wash. 2016) (quoting *Atl. Marine*, 572 U.S. at 65-66), *aff'd sub nom. Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081 (9th Cir. 2018). The forum selection clause does not prevent Plaintiff from adjudicating her claims in New York. *See id.* (rejecting argument that "enforcement of the forum selection clause would waive the protections of Washington law" because "Plaintiffs may still bring suit in [the other state] under Washington law").

Rather, the interests of justice here plainly *support* transfer. Plaintiff affirmatively agreed—by checking a box—"I have read and accept the Terms of Use." Decl. ¶¶ 10, 12. And any purported differential of bargaining power "will not vitiate a forum selection clause"; Plaintiff had the opportunity to reject the Terms of Use by not taking advantage of the Book Clubs program that Scholastic offered, but she did nonetheless. *Murphy*, 362 F.3d at 1141. Plaintiff should be held to her agreement.

## CONCLUSION

For the reasons set forth above, this Court should grant Defendant's motion and transfer this case to the U.S. District Court for the Southern District of New York.

Dated: March 23, 2026

/s/ Amanda Beane
Amanda Beane, WSBA No. 33070
LAW OFFICE OF AMANDA BEANE, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
Tel. 206-531-0224
amanda@amandabeanelaw.com

DEFENDANT'S MOTION TO TRANSFER
Page 11

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

Caren Decter (admitted *pro hac vice*)
Michael Salik (admitted *pro hac vice*)
FRANKFURT KURNIT KLEIN + SELZ
28 Liberty Street, 35th Fl.
New York, NY 10005
Tel. (212) 980-0120
cdecter@fkks.com
msalik@fkks.com

*Attorneys for Defendant Scholastic Inc.*

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224