HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

TRINA SAMSON, on her own behalf, and on behalf of others similarly situated,

      Plaintiff,

    v.

SCHOLASTIC INC.,

      Defendant.

Case No. 2:25−cv−02115−JNW

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER VENUE**

**NOTE ON MOTION CALENDAR: APRIL 20, 2026**

## INTRODUCTION

Plaintiff's opposition does not—and cannot—dispute that Plaintiff affirmatively checked a box that stated, "I have read and accept the [Scholastic] Terms of Use and Privacy Policy," to access Scholastic's Book Clubs platform:



The Terms of Use that she agreed to contain a mandatory New York forum-selection clause requiring that this action be brought in New York. This should be the end of the matter.

In an effort to evade the forum to which she agreed, Plaintiff advances four arguments: an

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

evidentiary challenge, a contract formation argument, an attack on the clause's scope, and a public policy argument. None withstand scrutiny.

First, Plaintiff's challenge to the admissibility of the Terms of Use ignores well-established authority accepting such evidence from the Internet Archive's Wayback Machine. Second, Plaintiff's assertion that no agreement was formed likewise disregards clear precedent upholding nearly identical online agreements. Third, Plaintiff's attempt to cabin the forum-selection clause to exclude her claims contradicts the clause's broad language, which plainly apply to her claims. Finally, Plaintiff's public-policy argument misfires by attacking a separate choice-of-law provision, even though the issue here is venue—not which law ultimately applies.

In short, Plaintiff identifies no legitimate basis to disregard the parties' binding agreement. Because Plaintiff agreed to litigate disputes in New York and cannot show exceptional circumstances warranting departure from that agreement, the Court must transfer this action to the Southern District of New York.

## ARGUMENT

**A.   THE COURT MAY CONSIDER SCHOLASTIC'S TERMS OF USE UNDER EITHER RULE 901 OR RULE 201(B)(2).**

Plaintiff argues that this Court cannot consider Scholastic's 2018 Terms of Use in deciding this transfer motion because they were pulled from the Internet Archive's Wayback Machine, rather than from Scholastic's internal records. This argument has been rejected by numerous courts in this Circuit. Under well-settled law, the Court may consider the records from the Wayback Machine under either Rule 901(a) or Rule 201(b)(2).

### 1.   Rule 901(a)

Rule 901(a) sets forth a modest standard. It requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). That showing may be made through the surrounding indicia of authenticity, such as screenshots, webpages, and other indicia in a declaration showing the materials are what the proponent claims. *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1193–94 (W.D. Wash. 2024).

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 2

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

That standard is met here. Scholastic's declarant Avery Gross, Senior Vice President Digital & Enterprise Systems Engineering, affirmed that he is familiar with Scholastic's current and past website functionality and user flows, including the relevant MyScholastic and Book Clubs flows; and that his declaration is based on his "personal knowledge" and review of Scholastic records, screenshots, and other documents maintained in the ordinary course. Gross Decl. ¶¶ 1–3. He further states that Exhibit A is a "true and correct copy" of the Terms of Use presented to users in 2018 when they clicked the "Terms of Use" hyperlink, which he retrieved from the Internet Archive's Wayback Machine, and that this copy comports with his recollection of the Terms on Scholastic's website at the time. *Id.* ¶ 11. Furthermore, he ties those Terms to the Book Club pop-up at issue and Scholastic's records confirming Plaintiff's October 4, 2018 acceptance and October 9, 2018 order. *Id.* ¶¶ 9–13. That is sufficient authentication, especially "[i]n the absence," as here, "of a specific challenge to authenticity." *Saeedy*, 757 F. Supp. 3d at 1193; *see, e.g.*, *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *5 (W.D. Wash. Nov. 19, 2019) (finding company representative's declaration based on personal knowledge and review of business records adequate to authenticate terms of use from Wayback Machine that that the declaration did not need "to describe how the Internet Archive works").

Here, Plaintiff does not identify any competing version of the Terms, dispute the text of the forum-selection clause, or contend that Exhibit A is inaccurate. Rather, she mischaracterizes the declaration as resting on Mr. Gross's "recollection alone." Opp. at 5. As shown above, the declaration is based on far more. Plaintiff's cases—*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011) and *Specht v. Google*, 747 F.3d 929, 933 (7th Cir. 2014)—merely stand for the unremarkable principle that authentication through an affidavit requires a competent witness with personal knowledge. That is exactly what Scholastic has provided, and Plaintiff fails to create any factual dispute: Mr. Gross is no stranger to the website or the Terms; he is a senior employee responsible for the relevant systems, attests to personal knowledge, connects Exhibit A to the pop-up screen that Plaintiff encountered on October 4, 2018 and to Scholastic's internal records of her acceptance, and attests that Exhibit A is a true and correct copy of the

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 3

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

2018 Terms. Scholastic is not required, as Plaintiff argues, to authenticate the Terms through a person with personal knowledge of the Wayback Machine's internal workings. Opp. at 5 (citing *Specht*); *see Saeedy*, 757 F. Supp. 3d at 1193 (no such authentication was required); *Harbers*, 2019 WL 6130822, at *5 (same). At bottom, there is no "factual conflict" here for the Court to resolve, Opp. at 5, and Mr. Gross has satisfied the modest requirements of Rule 901(a).

>        2.        Rule 201(b)(2)

The Court may independently take judicial notice of the 2018 Terms under Rule 201(b)(2). Judicial notice is appropriate where the matter "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). On that basis, "district courts in this circuit have routinely taken judicial notice of content from the Wayback Machine," *Gjovik v. Apple Inc.*, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025), especially where, as here, the party opposing the motion "offers no reason to think these documents are inaccurate," *Keller v. Chegg, Inc.*, 2023 WL 5279649, at *2 n.2 (N.D. Cal. Aug. 15, 2023). *See, e.g.*, *id.* (judicial notice of terms of use retrieved from Wayback Machine); *Saeedy*, 757 F. Supp. 3d at 1194 n.3 (judicial notice of Wayback Machine records); *Newell v. Inland Publications Inc.*, 2024 WL 1337177, at *2 (E.D. Wash. Mar. 28, 2024) (same); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) (same); *UL LLC v. Space Chariot, Inc.*, 250 F. Supp. 3d 596, 603-04 n.2 (C.D. Cal. 2017) (same); *Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849, *1 n.1 (N.D. Cal. July 6, 2015) (same); *see also, e.g.*, *Thorne v. Square, Inc.*, 2022 WL 542383, at *2 (E.D.N.Y. Feb. 23, 2022) (same, in other circuits); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (same, noting the court "follows the lead of the overwhelming number of courts that have decided the issue"). If the Court does not consider the 2018 Terms under Rule 901(a), the Court has ample basis to take judicial notice of them under Rule 201(b)(2), consistent with these decisions.

>    **B.        PLAINTIFF HAD CONSPICUOUS NOTICE OF, AND AFFIRMATIVELY ASSENTED TO, SCHOLASTIC'S TERMS OF USE.**

The relevant facts are straightforward and undisputed. When Plaintiff logged into

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 4

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

Scholastic Book Clubs for the 2018–2019 school year, she was presented with a pop-up requiring her to check a box stating, "I have read and accept the Terms of Use and Privacy Policy" before she could proceed. Gross Decl. ¶¶ 8–13. The phrase "Terms of Use" was hyperlinked in blue, capitalized font to the full Terms, and the "Continue to Site" button remained grayed out, preventing Plaintiff from proceeding until Plaintiff checked a box agreeing to the Terms. *Id.* ¶¶ 9–10. Scholastic's records confirm that Plaintiff accepted the Terms on October 4, 2018, and then placed a Book Clubs order on October 9, 2018. *Id.* ¶¶ 12–13. Those facts establish that Plaintiff received conspicuous notice and affirmatively assented to Scholastic's Terms of Use.

Plaintiff's misguided effort to relabel the Terms a "sign-in wrap agreement" rather than a "clickwrap agreement" does not change this analysis.[1] Whether the agreement was presented as a "true clickwrap," a "modified clickwrap," or "sign-in wrap" is beside the point. The inquiry is the same: (1) did "the website provide[] reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) [did] the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Both prongs are satisfied here.

Plaintiff's opposition does not take issue with the second prong. Her argument is limited to the first prong—*i.e.*, that the design of the pop-up failed to provide sufficiently conspicuous notice of the Terms. But that argument fails under the governing Ninth Circuit standard.

Notice of applicable contractual terms is sufficiently conspicuous if it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. That standard is met here. Upon logging into her

---

[1] Plaintiff argues that the Terms were not presented as a clickwrap agreement because they were available by hyperlink rather than displayed on the sign-up screen. However, numerous courts have characterized agreements nearly identical to Scholastic's Terms as "clickwrap." *See, e.g.*, *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463–64 (2021) (explaining that a "clickwrap" involves an "I accept" button with a "link," and a "scrollwrap" requires "physically scroll[ing]" to the bottom of the agreement to find the "I accept" button); *White v. PayPal Holdings Inc.*, 2026 WL 496712, at *6–7 (N.D. Cal. Feb. 23, 2026) (characterizing checkbox-based assent screens with *linked* terms, as here, as "clickwrap" agreements).

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 5

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

MyScholastic account for the first time in the 2018/2019 school year, she was presented with a pop-up window that she needed to interact with before entering the Book Clubs website. Gross. Decl. ¶¶ 8-10. Plaintiff could not proceed until she checked the box next to the statement, "I have read and accept the Terms of Use and Privacy Policy. (Required)." *Id.* ¶¶ 9-10.  Her attention was necessarily directed to that text, which was set off from the other material in the pop up. *Id.* There is no question that Plaintiff received notice of the Terms—she had to check the box in order to proceed. *Id.*

Courts routinely enforce this kind of checkbox-based assent. For example, *In re Wyze Data Incident Litigation* (discussed on page 8 of Scholastic's opening brief) enforced a nearly identical assent flow that Plaintiff makes no attempt to distinguish. 2020 WL 6202724, at 2–3 (W.D. Wash. Oct. 22, 2020); *see also White v. PayPal Holdings Inc.*, 2026 WL 496712, at *7–8 (N.D. Cal. Feb. 23, 2026) (enforcing checkbox-based assent with link to terms of use); *Hughes v. Am. Strategic Ins. Corp*, 766 F. Supp. 3d 1129, 1133, 1136 (W.D. Wash. 2025) (same).

Indeed, the Ninth Circuit has enforced less conspicuous user flows than the one here. In those cases, the user was merely told that taking some action constitutes agreement to the hyperlinked terms. *See, e.g.*, *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014, 1020 (9th Cir. 2024) (enforcing sign-in wrap agreement where users were "required to advance through a sign-in screen which states 'By tapping 'Play,' I agree to the [hyperlinked] Terms of Service.'"); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (enforcing sign-in wrap agreement where users, when creating an account, were "presented with a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our [hyperlinked] Terms of Use'"); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (enforcing sign-in wrap agreement because plaintiff validly assented to Ticketmaster's terms of use "each time he clicked the 'Sign-In' button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our [hyperlinked] Terms of Use'"). The user flow here is even more explicit than that: Plaintiff had to check a box stating directly next to it, "I have read

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 6

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

and accept the Terms of Use and Privacy Policy," with "Terms of Use" hyperlinked in blue, capitalized font.

Plaintiff's contrary arguments focus on two Ninth Circuit cases addressing efforts to infer notice and assent from generic, "continue" buttons, not a flow requiring a separate assent checkbox. *See Berman*, 30 F.4th at 861; *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1166-68 (9th Cir. 2025). In these cases, the issue was whether users had sufficient notice that by clicking a generic button labeled "Continue" they were agreeing to the company's Terms of Use. That is not the case here. Scholastic's notice and assent mechanism *were one and the same:* a required checkbox that expressly stated, "I have read and accept the Terms of Use and Privacy Policy," which sat directly above a grayed-out "Continue to Site" button. Plaintiff *had to* interact with this checkbox mechanism before she could proceed.

Additionally, the notices in *Berman* and *Chabolla* were far less conspicuous than Scholastic's notice. In *Berman*, notice was in tiny font and the hyperlink was not in contrasting blue font (as is typical for denoting hyperlinks) (*Berman*, 30 F.4th at 861):

In *Chabolla*, the notice was too far below the action button:

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 7

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

129 F.4th at 1166. The Ninth Circuit noted in *Chabolla*:

> For users (like Chabolla) who enter their email address, the most obvious and natural next step is to click "Continue." If a user continued to read down the page, they would see an option to "Sign up with Facebook." The notice of additional terms is found below the "Sign up with Facebook" option, on the periphery of where a user intending to use their email would be looking. A reasonably prudent user would likely click "Continue" and read no further if she had no intention of using Facebook.

129 F.4th at 1157.

By contrast, Scholastic's notice is similar to the notices deemed sufficient by the Ninth Circuit in *Oberstein* and *Keebaugh*. The language "I have read and accept the Terms of Use and Privacy Policy" was in font size similar to other text in Scholastic's pop up. Furthermore, the "design elements use a 'contrasting font color' making the notice legible" and clearly denote the existence of a hyperlink. *Keebaugh*, 100 F.4th at 1020 (quoting *Berman*, 30 F.4th at 857); *see Oberstein*, 60 F.4th at 516–17. Plaintiff contends that the pop-up somehow deemphasized the checkbox assent to Terms and emphasized "CONTINUE TO SITE" as the next step for engagement. However, Plaintiff ignores that the "Continue to Site" button ***was grayed out*** until Plaintiff checked the box agreeing to Scholastic's Terms. Gross Decl. ¶¶ 9-10.

C.     **PLAINTIFF'S CLAIMS FALL WITHIN THE TERMS' MANDATORY FORUM-SELECTION CLAUSE.**

Plaintiff next argues that Scholastic's forum-selection clause does not cover claims

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER VENUE
Page 8

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

stemming from marketing emails. But this argument ignores the provision's plain language. The Terms provide that "You and Scholastic each agree to submit to the exclusive jurisdiction of the courts of the state of New York and the federal courts of the southern district of New York." Gross Decl. ¶ 14 & Ex. A. That is broad, mandatory language. As *Koresko v. RealNetworks, Inc.* explained when enforcing a similar online clause, the plain meaning of "exclusive jurisdiction" is "no other forum," and *Koresko* enforced that clause as to statutory and unfair-business-practices claims, not just contract claims. 291 F. Supp. 2d 1157, 1158, 1162–63 (E.D. Cal. 2003). The "common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it." *Id.* (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).

Contrary to Plaintiff's opposition, the forum selection provision is not "limited to claims regarding the Terms themselves." Opp. at 10. If that were the case, the clause would contain limiting language making clear that it only applies to claims "arising out of these Terms."[2] But the forum selection clause does not contain any such language restricting application of the provision to disputes concerning the "Terms themselves." While Plaintiff asserts that "Scholastic's choice-of-law and forum provisions solely refer to the Agreement itself," that is a blatant sleight of hand. Opp. at 13. The choice-of-law provision states, "This Agreement shall be governed by and construed in accordance with the laws of the state of New York." Gross Decl. Ex. A at 3. The forum selection provision, however, ***makes no reference to the Agreement.***

Rather, the Terms broadly "apply to Scholastic.com and any other site owned and/or operated by or on behalf of Scholastic Inc. or any of its subsidiaries[.]" *Id.* at 1. The commercial emails at issue in this lawsuit were sent from a Scholastic.com email domain and promoted sales on the Scholastic Store Online website. Jaffe Decl. ¶¶ 3-4 & Ex. A. As Plaintiff's opposition admits, these emails were an invitation for Plaintiff to make a purchase on a website operated by

---

[2] Plaintiff's cited cases prove this point—the narrow choice-of-law clauses in those cases were limited to the "meaning," "effect," "validity," "construction," or "enforcement" of the agreement. *See* Opp. at 12–13.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 9

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

Scholastic. Opp. at 16. Accordingly, Plaintiff's claims fall squarely within the forum-selection clause. The fact that Scholastic did not enumerate every type of covered claim does not create ambiguity; it reflects the clause's broad jurisdictional wording.

### D.    PLAINTIFF'S PUBLIC-POLICY ARGUMENT DOES NOT COME CLOSE TO DEFEATING TRANSFER.

A valid forum-selection clause must be enforced in all but the most exceptional cases. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013). The Ninth Circuit has elaborated that the party resisting a forum-selection clause bears a heavy burden of showing the sort of exceptional circumstances that justify disregarding it, and identified three exceptions. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018). Plaintiff invokes only the public-policy exception, but her argument fails because it focuses on the wrong provision: the choice-of-law clause.

Plaintiff spends pages arguing that enforcing Scholastic's choice-of-law clause would "defeat Plaintiffs' claims for relief." Opp. at 15-17. But Plaintiff nowhere explains why enforcing the ***forum-selection clause*** would violate a fundamental public policy of Washington. Enforcing the forum-selection clause decides where this case must be litigated; it does not determine what substantive law the transferee court will apply or whether Plaintiff may pursue Washington-law claims there. *Sun v. Kao* made exactly this point. 170 F. Supp. 3d 1321 (W.D. Wash. 2016). The plaintiffs in that case argued that enforcing a California forum-selection clause would effectively strip them of Washington securities remedies because the contract also contained a California choice-of-law clause. *Id.* at 1325. The court rejected that argument, explaining that "enforcement of the forum-selection clause does not necessitate enforcement of the choice-of-law clause," that the choice-of-law clause could be challenged separately due to the severability provision, and that plaintiffs had not shown they would be left without a remedy as a result of enforcing the forum-selection clause. *Id.* at 1325–26. The Ninth Circuit affirmed, rejecting the argument that an anti-waiver policy contained in the Washington State Securities Act defeated the forum-selection clause. 901 F.3d 1081, 1088–89.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER VENUE
Page 10

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

So too here. Whether Washington law governs Plaintiff's claims is a choice-of-law issue for the transferee court. It is not a basis to disregard the Parties' agreement to litigate in New York in the first place; Plaintiff can challenge the choice-of-law clause separately in the proper forum, including because the 2018 Terms contains a severability provision. *See Sun v. Kao*, 170 F. Supp. 3d at 1325–26; *Yei A. Sun*, 901 F.3d at 1088–89. Plaintiff makes no showing that enforcing the *forum-selection clause* would impair any of her rights under Washington law. For that reason, *McKee*, *Mountain Hi*, *Carideo*, and *Dix*, Opp. at 16–17, are all easily distinguishable, as they either concerned choice-of-law clauses or made case-specific findings that the forum-selection clause would impair state rights. Plaintiff's reliance on *Rolovich v. Washington State Univ.*, 2023 WL 2401769 (E.D. Wash. Mar. 8, 2023), moreover, is beside the point. Opp. at 17. That case addressed whether a clause's language reaches statutory claims. But that is a question of scope—and, as addressed above, the forum-selection clause here does encompass Plaintiff's claims. The question here, however, is different: whether enforcing this forum-selection clause would contravene a strong Washington policy sufficient to overcome *Atlantic Marine*'s command. Under *Atlantic Marine* and *Yei A. Sun*, it does not.

Plaintiff has not shown anything close to the extraordinary circumstances required to disregard the forum selection clause. She remains free to pursue her substantive arguments in the forum she agreed to. What she cannot do is convert a disagreement about the possible choice-of-law analysis into a basis for disregarding the forum-selection clause altogether. The forum selection clause must be enforced.

<u>**CONCLUSION**</u>

For the reasons set forth above, this Court should grant Defendant's motion and transfer this case to the U.S. District Court for the Southern District of New York.

Dated: April 20, 2026                         */s/ Amanda Beane*
                                                 Amanda Beane, WSBA No. 33070
                                                 LAW OFFICE OF AMANDA BEANE, P.C.
                                                 7724 35th Ave NE, P.O. Box 15526
                                                 Seattle, WA 98115

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 11

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

Tel. 206-531-0224
amanda@amandabeanelaw.com

Caren Decter (admitted *pro hac vice*)
Michael Salik (admitted *pro hac vice*)
FRANKFURT KURNIT KLEIN + SELZ
28 Liberty Street, 35th Fl.
New York, NY 10005
Tel. (212) 980-0120
cdecter@fkks.com
msalik@fkks.com

*Attorneys for Defendant Scholastic Inc.*

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 12

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date below, I served the foregoing document via email on counsel for Plaintiff:


Samuel J. Strauss,
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@strausborrelli.com

Lynn A. Toops
Natalie A. Lyons
Ian R. Bensberg
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Michael C. Tackeff (pro hac vice)
Gerard J. Stranch, IV
Andrew K. Murray
STRANCH, JENNINGS & GARVEY, PLLC 223
Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-880
mtackeff@stranchlaw.com
gstranch@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*


Executed this 20th day of April, 2026 at Spokane, Washington.


By:    /s/ Gretchen Barbieri

        R. Gretchen Barbieri, Paralegal

DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO TRANSFER VENUE
Page 13

Law Office of Amanda Beane, P.C.
7724 35th Ave NE, P.O. Box 15526
Seattle, WA 98115
206-531-0224